UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARTIN MEDINA ARROYO,

Plaintiff,

v.

CALIFORNIA HIGHWAY PATROL, et al.,

Defendants.

Case No.  25-cv-00439-PCP

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 34, 42, 46, 47, 49

Plaintiff Martin Medina Arroyo asserts claims under state and federal law against the California Highway Patrol and Officer Jared Cantu, alleging that defendants arrested and detained him without probable cause and used excessive force in violation of his civil rights. Defendants now move for summary judgment on all of Mr. Arroyo's claims. For the reasons below, the motion is granted.

**BACKGROUND**

This case arises from a roadside stop and DUI arrest by the California Highway Patrol (CHP). Unless otherwise noted, the facts recounted below are undisputed.

On April 18, 2024, Mr. Arroyo "was driving on the freeway when his car ran out of gas" on an off-ramp in San José.[1] After leaving the car on the side of the off-ramp, he "walked to a nearby gas station to get some gas for his vehicle."[2] Officers Jared Cantu and Val Cantu, who were in a patrol vehicle nearby, then "received a call of a vehicle on the right-hand shoulder of

---

[1] Complaint, Dkt. No. 1-1 ¶ 10. Although Mr. Arroyo's unverified complaint is not admissible evidence, *see Moran v. Selig*, 447 F.3d 748, 759 (9th Cir. 2006), the Court treats the allegations therein as judicial admissions to the extent they comport with defendants' factual assertions, *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).

[2] *Id.* at ¶ 11.

[the highway] with a person standing outside the vehicle."[3] The officers "located the vehicle," a "blue Audi sedan," and "positioned [their] vehicle behind the car to conduct a wellness check."[4] But because Mr. Arroyo had walked away from his vehicle to get gas, the officers "did not locate any occupants" when they inspected the car.[5]

Mr. Arroyo encountered the officers a few minutes later "[u]pon returning to his vehicle."[6] The officers "located [him] walking under the freeway … holding a can of gas" and, from their position on the off-ramp, "asked him if the Audi was his vehicle," which Mr. Arroyo confirmed.[7] The officers then "drove down to contact him."[8] When the officers reached him, Mr. Arroyo explained that he had run out of gas about ten minutes before their arrival.[9]

Val then asked Mr. Arroyo a series of screening questions and instructed Mr. Arroyo to perform a series of field sobriety tests.[10] The basis for those questions and tests is disputed. Val attested that, when inspecting Mr. Arroyo's vehicle, he had "observed a box of Modelo beer cans with some open and in the driver seat cup holders."[11] He further attested that, when speaking with Mr. Arroyo, he "smelled the odor of an alcoholic beverage emitting from [Mr. Arroyo's] breath and person" and "noticed his red/watery eyes."[12] Val also attested that he "asked Mr. Arroyo how much alcohol he had consumed that night," to which Mr. Arroyo responded "that he did not have that much."[13] Mr. Arroyo denies that he had consumed any alcohol or that there were any open containers in his vehicle.[14] Mr. Arroyo also contends that Val's claim that Mr. Arroyo's person

---

[3] Decl. of V. Cantu, Dkt. No. 34-1 ¶ 3; *see also* Decl. of J. Cantu, Dkt. No. 34-2 ¶ 3.

[4] Decl. of V. Cantu, Dkt. No. 34-1 ¶ 3; *see also* Decl. of J. Cantu, Dkt. No. 34-2 ¶ 3.

[5] Decl. of V. Cantu, Dkt. No. 34-1 ¶ 3; Decl. of J. Cantu, Dkt. No. 34-2 ¶ 3.

[6] Complaint, Dkt. No. 1-1 ¶ 12.

[7] Decl. of V. Cantu, Dkt. No. 34-1 ¶ 4; Decl. of J. Cantu, Dkt. No. 34-2 ¶ 4.

[8] Decl. of V. Cantu, Dkt. No. 34-1 ¶ 4; Decl. of J. Cantu, Dkt. No. 34-2 ¶ 4.

[9] Decl. of V. Cantu, Dkt. No. 34-1 ¶ 5; Decl. of J. Cantu, Dkt. No. 34-2 ¶ 5.

[10] Decl. of V. Cantu, Dkt. No. 34-1 ¶¶ 6–8; Decl. of J. Cantu, Dkt. No. 34-2 ¶ 6.

[11] Decl. of V. Cantu, Dkt. No. 34-1 ¶ 3.

[12] *Id.* ¶ 6.

[13] *Id.*

[14] Plaintiff's Evidentiary Response Table and Statement of Disputed Facts, Dkt. No. 41, at 3.

smelled of alcohol is contradicted by later blood testing showing that Mr. Arroyo had a blood-alcohol content of 0%.[15] Mr. Arroyo does not dispute that his eyes were red and watery.

In response to Val's screening questions, Mr. Arroyo revealed that "he had left from a friend's house and did not have any passengers."[16] Mr. Arroyo then performed three field sobriety tests: horizontal gaze nystagmus, walk and turn, and one-leg stand.[17] According to Val, the first test revealed that "Mr. Arroyo displayed a lack of smooth pursuit in both eyes" and "distinct and sustained nystagmus at maximum deviation in both eyes." During the walk-and-turn test, "Mr. Arroyo did not stay in the starting position as instructed," "got to nine steps on the initial pass" before "stopp[ing] for approximately 35 seconds," "turned around by lifting his front foot and pivoting on his left," and "[o]n the return pass … held his hands together in front of his body while walking." During the one-leg stand, Mr. Arroyo "started laughing during the instructional phase." And "[w]hen directed to perform the test, Mr. Arroyo again held his hands together in front of his body," "lifted his foot [only] one inch off the ground," "began counting the seconds out loud," was unable to stand on one leg for more than 11 seconds, and "started laughing" once more after dropping his foot to the ground.[18] Mr. Arroyo refused to submit to a fourth test—a preliminary alcohol screening device (i.e., a breathalyzer).[19] Mr. Arroyo does not dispute Val's recollection of Mr. Arroyo's performance on the field sobriety tests. But Mr. Arroyo contends that he lost his balance only because the tests were performed "on a steep, gravel freeway slope" while being buffeted by wind from passing trucks, and that Val perceived nystagmus only because Mr. Arroyo was facing "flashing high-intensity strobe lights."[20]

While Val was performing the screening and field sobriety tests, Jared returned to Mr. Arroyo's car. He attests that the hood of the vehicle "was warm to the touch, indicating the vehicle

---

[15] *Id.*

[16] Decl. of V. Cantu, Dkt. No. 34-1 ¶ 8.

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] Plaintiff's Evidentiary Response Table and Statement of Disputed Facts, Dkt. No. 41, at 4.

United States District Court
Northern District of California

was recently used" and that he "observed that the seat was adjusted to someone of Mr. Arroyo's size and stature."[21] Upon returning to Val and Mr. Arroyo's location, Jared conveyed this information to his partner and watched as Mr. Arroyo completed the walk-and-turn and one-leg-stand tests.[22]

Based on the foregoing, Val "formed the opinion that Mr. Arroyo had been driving under the influence of an alcoholic beverage" in violation of California Vehicle Code § 23152(a).[23] Val therefore placed Mr. Arroyo under arrest pursuant to California Vehicle Code § 40300.5(b), which authorizes warrantless arrests "when [an] officer has reasonable cause to believes that [a] person had been driving while under the influence of an alcoholic beverage" and "[t]he person is observed in or about a vehicle that is obstructing a roadway."[24] In his complaint, Mr. Arroyo alleges that the officers "used excessive force" when arresting him, including "by physically assaulting him" and using "overly tight handcuffs," and had an intimidating "demeanor."[25] But the officers attested that they neither "spoke rudely to Mr. Arroyo at any time" nor "'manhandle[d],' assault[ed] or batter[ed] him in any way,"[26] and that Mr. Arroyo "did not wince, cry out or otherwise react to the application of the handcuffs, nor did he complain that they were too tight."[27] Mr. Arroyo has presented no evidence to the contrary.

After the arrest, the officers "transported Mr. Arroyo to [CHP's] San Jose Area office," where Mr. Arroyo's blood was drawn for testing pursuant to a judicial warrant.[28] Thereafter, the officers "transported Mr. Arroyo to the Santa Clara County Main Jail where he was booked for [alleged violations] of California Vehicle Code sections 23152(a) and (b)."[29] Mr. Arroyo was

---

[21] Decl. of J. Cantu, Dkt. No. 34-2 ¶ 6.

[22] *Id.* ¶ 7; Decl. of V. Cantu, Dkt. No. 34-1 ¶ 7.

[23] Decl. of V. Cantu, Dkt. No. 34-1 ¶ 9.

[24] *Id.*

[25] Complaint, Dkt. No. 1-1 ¶ 26.

[26] Decl. of J. Cantu, Dkt. No. 34-2 ¶ 9; Decl. of V. Cantu, Dkt. No. 34-1 ¶ 11.

[27] Decl. of V. Cantu, Dkt. No. 34-1 ¶ 9.

[28] *Id.* ¶ 10; *see also* Decl. of J. Cantu, Dkt. No. 34-2 ¶ 8.

[29] Decl. of J. Cantu, Dkt. No. 34-2 ¶ 8; Decl. of V. Cantu, Dkt. No. 34-1 ¶ 10.

United States District Court
Northern District of California

released three days later without being charged.[30] His blood ultimately tested negative for alcohol but positive for amphetamines and methamphetamines.[31]

Mr. Arroyo commenced this action in December 2024 by filing a complaint against Jared Cantu, CHP, and ten unnamed defendants in Santa Clara County Superior Court. The complaint asserts state-law claims for negligence, battery, and violation of the Bane Act, Cal Civ. Code § 52.1, as well as federal claims under 42 U.S.C. § 1983 for use of excessive force and unreasonable seizure without probable cause in violation of the Fourth Amendment. Defendants removed the case to federal court in January 2025. While discovery was still open, Mr. Arroyo's counsel moved to withdraw, and the Court granted that request, leaving Mr. Arroyo to proceed *pro se* as of December 2025.

Defendants filed their motion for summary judgment on all of Mr. Arroyo's claims in March 2026. Because Mr. Arroyo did not file any response to the motion by the deadline, the Court ordered Mr. Arroyo to show cause why this action should not be dismissed for failure to prosecute. Mr. Arroyo responded to that order and filed a belated opposition to defendants' motion for summary judgment in May 2026. Thereafter, Mr. Arroyo asked the magistrate judge to compel defendants to produce video and audio recordings from the CHP station where his blood was drawn on the night of his arrest. The magistrate judge denied the request based on defendants' representations that no such recordings exist and Mr. Arroyo's failure to provide any evidence to the contrary. Mr. Arroyo now moves for relief from the magistrate judge's order. He also requests that, in light of defendants' alleged failure to produce station recordings from the night of his arrest, the Court extend his expert-disclosure deadline and defer ruling on defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(d). Finally, Mr. Arroyo asks the Court to refer this action for a settlement conference before the magistrate judge.

---

[30] Complaint, Dkt. No. 1-1 ¶¶ 20, 40. To the extent Mr. Arroyo now asserts that he was detained for a significantly longer period, the judicial admission in his complaint that his detention ended after three days—an assertion Mr. Arroyo repeated in his opposition to defendants' motion for summary judgment—forecloses such an assertion.

[31] Toxicology Results, Dkt. No. 41-3, at 1.

United States District Court
Northern District of California

**LEGAL STANDARD**

Courts may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is material if it "might affect the outcome of the suit under the governing law." *Id.*

The moving party bears the initial burden to demonstrate a lack of genuine factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 325). The burden then shifts to the nonmoving party to "provide affidavits or other sources of evidence that 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 1076 (quoting Fed. R. Civ. P. 56(e)). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* at 587.

**ANALYSIS**

I.    **There is no reason to delay adjudication of defendants' motion for summary judgment.**

Mr. Arroyo requests that the Court defer ruling on defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(d). Under that provision, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may … defer considering the motion" and "allow [the nonmovant] time to obtain affidavits or declarations or to take discovery" concerning such essential facts. Fed. R. Civ. P. 56(d)(1)–(2). Mr. Arroyo filed an affidavit attesting that he is

unable to present facts essential to his opposition to defendants' motion because, he claims, (1) defendants materially altered the video recording of his roadside arrest before submitting such recording to Mr. Arroyo and this Court and (2) defendants have failed to produce additional video and audio recordings from the CHP station where his blood was drawn on the night of his arrest. Mr. Arroyo therefore requests that the Court defer consideration of defendants' motion for summary judgment, order defendants to produce the unaltered recording of his arrest, and vacate the magistrate judge's order denying his motion to compel production of the alleged station recordings. The Court denies these requests for three reasons.

First, Mr. Arroyo's challenge to the accuracy of the recording of his roadside arrest (and demand for the "unedited" recording) is untimely. As defendants' former counsel attested, defendants first disclosed the allegedly altered recording to Mr. Arroyo's then-counsel on March 24, 2025.[32] Mr. Arroyo's counsel had more than seven months before his withdrawal to review the recording, consult with Mr. Arroyo concerning its accuracy, and move to compel production of an unedited recording if Mr. Arroyo believed that the version provided had been altered. Mr. Arroyo's counsel never filed any such motion. Nor did Mr. Arroyo do so for more than six months after he began proceeding pro se. Instead, Mr. Arroyo waited until two weeks before the discovery cutoff date in June 2026—fifteen months after first receiving the recording and three months after defendants filed their motion for summary judgment—to assert that the recording was inaccurate and to demand production of an unedited version. Yet Mr. Arroyo provides no explanation for this delay. He suggests only that he did not receive his "master litigation file" from his former counsel until recently. But the "new" information allegedly contained in that file related to emails between his and defendants' counsel, not the metadata underlying his assertion that the recording of his arrest was altered. Nor does that explain why Mr. Arroyo's former counsel could not have earlier discovered and challenged any alteration of the recording. Such a "failure to pursue discovery diligently provides an adequate ground for denying a motion for continuance to pursue discovery" under Rule 56(d). *Sheiner v. Mayorkas*, No. 22-CV-04871-SVK, 2023 WL 3568088, at *7 (N.D.

---

[32] Decl. of K. Speer, Dkt. No. 45-1 ¶ 6.

United States District Court
Northern District of California

Cal. Apr. 14, 2023) (citing *Schindler Elevator Corp.*, 113 F.3d 912, 921 (9th Cir. 1996)); *see also Emps. Teamsters Loc. Nos. 175 & 505 Pension Tr. Fund v. Clorox Co.*, 353 F.3d 1125, 1130 (9th Cir. 2004) ("The district court does not abuse its discretion by denying further discovery if the movant has failed diligently to pursue discovery in the past[.]" (citation modified)).

Second, as the magistrate judge explained, nothing in the record suggests that any recording of Mr. Arroyo's time at the CHP station exists. *See* Dkt. No. 48 at 1–2. Defendants' former counsel attested that she investigated whether such recordings exist, determined that they do not, and stated as much in email communications to Mr. Arroyo's former counsel and in defendants' formal discovery responses.[33] Mr. Arroyo has not identified any evidence that casts doubt on those representations, and his "mere suspicion that additional [recordings] exist is an insufficient basis to grant a motion to compel." *Mizrahi v. Google LLC*, 732 F. Supp. 3d 1068, 1070 (N.D. Cal. 2024). Although Mr. Arroyo insists that the magistrate judge ignored certain of the evidence he submitted, the materials to which he points do not suggest the existence of an undisclosed recording from the CHP station. The magistrate judge's denial of his motion to compel production of those non-existent recordings was therefore not "clearly erroneous," as would be required for this Court to vacate her order. *See* Fed. R. Civ. P. 72(a).

Third, Mr. Arroyo has not demonstrated that either the "unedited" recording of his arrest or the alleged recording of his time at the CHP station—if they exist—would preclude summary judgment. *See Emps. Teamsters Loc. Nos. 175 & 505 Pension Tr. Fund*, 353 F.3d at 1130 (explaining that a district court may deny a continuance and further discovery where the requesting party "fails to show how the information sought would preclude summary judgment" (citation modified)). He asserts that the recordings would show that he requested and was denied an attorney when being arrested and that he submitted to a blood draw at the CHP station only because an officer threatened to tie him to a chair if he refused. But those assertions are untethered to the claims in Mr. Arroyo's complaint. In the complaint, Mr. Arroyo makes no mention of any

---

[33] *See* Decl. of K. Speer, Dkt. No. 45-1 ¶¶ 2, 11-12; Email from K. Speer to G. Magana (June 6, 2025), Dkt. No. 45-2, at 7; Response to Request for Production of Documents to Defendant California Highway Patrol, Dkt. No. 45-2, at 13.

denial of his right to counsel, and he alleges that the officers used force and intimidation only during his initial roadside arrest, not after later transporting Mr. Arroyo to the CHP station for a blood draw. So the recordings Mr. Arroyo seeks would not preclude summary judgment because he cannot rely on entirely new factual allegations in opposition to defendants' motion. *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 966, 969 (9th Cir. 2006) (holding that a district court properly "disallowed [plaintiff]'s new assertions … that she raised before the court for the first time following the [defendants]' motion for summary judgment" instead of in an amended complaint); *Lumpkin v. Mail Room Clerks*, No. 17-CV-1644, 2018 WL 4178266, at *4 (W.D. Wash. Aug. 6, 2018) ("Plaintiff's summary judgment response alleg[ing] additional conduct during the transport process—after the completion of the handcuffing that is the subject of his [operative] complaint—which he contends constitutes excessive force … cannot defeat summary judgment" where such "assertions are not alleged in the [operative] complaint."), *report and recommendation adopted*, 2018 WL 4144465 (W.D. Wash. Aug. 29, 2018).

Accordingly, Mr. Arroyo's request for a continuance and discovery under Rule 56(d) and his motion for relief from the magistrate judge's order are denied.

## II.    Defendants' motion for summary judgment is granted.

Defendants move for summary judgment on each of Mr. Arroyo's five claims. Because CHP is an arm of the state, *see Vierria v. California Highway Patrol*, 644 F. Supp. 2d 1219, 1232 (E.D. Cal. 2009), it is not a "person" that may be held liable under 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989). And under California law, a public entity may be held liable for an employee's act or omission only if the employee's "act or omission would … have given rise to a cause of action against that employee." Cal. Gov't Code § 815.2(a). CHP is therefore liable to Mr. Arroyo only to the extent defendant Jared Cantu is, or non-party officer Val Cantu would be, individually liable to Mr. Arroyo on his state law claims. The Court therefore focuses on the individual officers' liability for their alleged negligence, battery, and violations of the Bane Act and Fourth Amendment.

Each of Mr. Arroyo's claims turns on one of two factual allegations. Defendants argue that the video recording they submitted of the arrest disproves both allegations. But even disregarding

United States District Court
Northern District of California

that recording, the accuracy of which Mr. Arroyo vigorously contests, the Court concludes that no material dispute exists as to the core factual assertions underlying Mr. Arroyo's claims.

First, Mr. Arroyo alleges in his complaint that the officers who arrested him grabbed him aggressively, contorted his arms, handcuffed him too tightly, and otherwise physically harmed, threatened, and intimidated him. On that basis, he claims that the officers (1) engaged in common-law battery; (2) used excessive force in violation of the Fourth Amendment; and thereby (3) "interfere[d] by threat, intimidation [and] coercion … with [his] exercise … of rights secured by the Constitution … of the United States" in violation of the Bane Act, Cal. Gov't Code § 52.1(b). Mr. Arroyo also contends that this alleged physical harm and intimidation resulted from defendants' (4) common-law negligence in failing to adequately train the officers and to adequately assess the need for force. But defendants submitted a declaration from Jared Cantu attesting that the officers did not "'manhandle,' assault or batter [Mr. Arroyo] in any way" and that neither officer acted to intimidate or even "spoke rudely to [him] at any time."[34] Val Cantu also attested that Mr. Arroyo "did not wince, cry out or otherwise react to the application of the handcuffs, nor did he complain that they were too tight."[35] Defendants have therefore borne their initial burden at the summary-judgment stage, shifting the burden to Mr. Arroyo to produce contrary evidence supporting his claims. *See Devereaux*, 263 F.3d at 1076. He has not done so. The sworn declarations and other documents he submitted in connection with his opposition to defendants' motion focus entirely on their lack of probable cause and say nothing of any physical harm or intimidation during his arrest. Nothing in the available record rebuts the officers' attestations of their reasonable, non-forceful conduct. As a result, no material dispute exists concerning Mr. Arroyo's claims based on their use of allegedly excessive force.

Second, Mr. Arroyo alleges in his complaint that the officers who arrested and detained him lacked probable cause to do so. On that basis, he claims that the officers are liable for (1) common-law negligence due to their failure to exercise reasonable care; (2) effecting an

---

[34] Decl. of J. Cantu, Dkt. No. 34-2 ¶ 9; Decl. of V. Cantu, Dkt. No. 34-1 ¶ 11.

[35] Decl. of V. Cantu, Dkt. No. 34-1 ¶ 9.

United States District Court
Northern District of California

unreasonable seizure in violation of the Fourth Amendment; and (3) interfering with his rights to be free from unreasonable detention and unreasonable seizures under the California Constitution, art. I, §§ 10, 13, in violation of the Bane Act, Cal. Gov't Code § 52.1(b).[36]

The test for whether an officer has "probable cause" to make a warrantless arrest under California law and under the Fourth Amendment are "very similar." *See Peng v. Mei Chin Penghu*, 335 F.3d 970, 976 (9th Cir. 2003), *abrogated on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009); *see also Q. M. v. Cnty. of Los Angeles*, No. 2:21-CV-09382, 2025 WL 1148283, at *11 (C.D. Cal. Mar. 18, 2025). Each asks, in essence, whether "under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that the suspected had committed a crime." *Peng*, 335 F.3d at 976.

Here, the officers arrested Mr. Arroyo for a suspected violation of California Vehicle Code § 23152(a), which prohibits "driv[ing] a vehicle" while "under the influence of any alcoholic beverage." There is no genuine dispute that the officers had probable cause to believe that Mr. Arroyo drove his car while under the influence of an alcoholic beverage.

As to the first element, Mr. Arroyo all but told the officers that he had been driving his car. Both officers attested that, when asked, Mr. Arroyo confirmed that the blue Audi sedan parked on the road was his and that he had run out of gas roughly ten minutes before the officers' arrival.[37] Other signs confirmed this—the officers attested that Mr. Arroyo was walking back toward the car with a can of gas in hand; the hood of the car was still warm to their touch; and they observed that the front seat was adjusted to someone of Mr. Arroyo's size and stature.[38] Mr. Arroyo does not

---

[36] Mr. Arroyo suggests in his opposition to defendants' motion that his detention also constitutes false imprisonment in violation state law. *See* Cal. Penal Code § 847(b). Because he asserted this claim for the first time in opposition to summary judgment, it cannot defeat defendants' motion. *See Jackson v. Curry*, No. 08-CV-05207, 2013 WL 5366982, at *3 (N.D. Cal. Sept. 25, 2013) (collecting cases). In any event, a false-imprisonment claim under California law relies on the same probable-cause standard as Mr. Arroyo's Fourth Amendment claim, *see Q. M. v. Cnty. of Los Angeles*, No. 2:21-CV-09382, 2025 WL 1148283, at *11 (C.D. Cal. Mar. 18, 2025), and would fail for the same reasons.

[37] Decl. of V. Cantu, Dkt. No. 34-1 ¶¶ 4–5; Decl. of J. Cantu, Dkt. No. 34-2 ¶¶ 4–5.

[38] Decl. of V. Cantu, Dkt. No. 34-1 ¶¶ 4, 7; Decl. of J. Cantu, Dkt. No. 34-2 ¶¶ 4, 6–7.

United States District Court
Northern District of California

offer any evidence to the contrary; he simply protests that the officers did not see him driving or even sitting inside of the car. But "probable cause means 'fair probability,' not certainty." *United States v. Gourde*, 440 F.3d 1065, 1069, 1073 (9th Cir. 2006) (en banc) (quoting *Illinois v. Gates*, 462 U.S. 213, 246 (1983)). The circumstantial evidence known to the officers (including Mr. Arroyo's own reported statement that he had run out of gas shortly before they arrived) made it more than fairly probable that Mr. Arroyo had recently been driving the vehicle.

As to the second element, the undisputed facts also demonstrate that the officers had probable cause to believe that Mr. Arroyo was under the influence of an alcoholic beverage. Val Cantu attested that, at the time he placed Mr. Arroyo under arrest, he had seen open beer cans in Mr. Arroyo's vehicle, smelled an odor of alcohol on Mr. Arroyo's person, noticed Mr. Arroyo's red and watery eyes, observed nystagmus (i.e., rapid and involuntary movement) in Mr. Arroyo's eyes, and watched as Mr. Arroyo was unable to complete two balance tests, during which Mr. Arroyo repeatedly broke out in laughter, held his hands in unusual positions, and began counting out loud.[39] Val also attested that, when he asked how much alcohol Mr. Arroyo had consumed, Mr. Arroyo responded "that he did not have that much."[40]

Mr. Arroyo directly rebuts only two of these bases for his arrest, attesting that he did not make any verbal statement that he had consumed alcohol and had no open containers in his vehicle.[41] But Val's remaining, unrebutted observations—including that Mr. Arroyo had red eyes, failed multiple field sobriety tests, and repeatedly began laughing—were alone enough for a prudent person to believe it was fairly possible that Mr. Arroyo was under the influence of an alcoholic beverage. *See Rawlings v. Kunnath*, No. 19-CV-97, 2021 WL 4328722, at *6 (D. Mont. Sept. 23, 2021) ("It is well-established that an officer's observations, including the failure of field sobriety tests, can result in a reasonable belief that there exists a fair probability that the crime of DUI has been committed."); *see also United States v. French*, No. 2:08-MJ-726, 2010 WL

---

[39] Decl. of V. Cantu, Dkt. No. 34-1 ¶¶ 3, 6, 8.

[40] *Id.* ¶ 6.

[41] Plaintiff's Evidentiary Response Table and Statement of Disputed Facts, Dkt. No. 41, at 3.

United States District Court
Northern District of California

1633456, at *3–4 (D. Nev. Apr. 22, 2010) (similar), *aff'd*, No. 2:10-CV-1072, 2011 WL 90083 (D. Nev. Jan. 10, 2011), *aff'd*, 468 F. App'x 737 (9th Cir. 2012).

Mr. Arroyo suggests that the later results of his blood test, showing no alcohol in his system, disprove Val's observations. The blood test results were not known to Val at the time of the arrest, however, and thus do not bear on whether probable cause existed at that time. *Id.* at *7; *Spies v. City of Scottsdale, Ariz.*, No. 12-CV-1020, 2013 WL 1339896, at *8 (D. Ariz. Apr. 1, 2013); *see also District of Columbia v. Wesby*, 583 U.S. 48, 56–57 (2018) (explaining that probable cause is assessed based on the officer's knowledge at the time of arrest and does not require an actual showing of criminal activity).

Mr. Arroyo also argues that causes other than his consumption of alcohol, like nearby strobe lights and wind from passing trucks, might have caused some of his difficulty with the field sobriety tests. But even at trial, where the more stringent beyond-a-reasonable-doubt standard applies, "the prosecution need not affirmatively rule out every hypothesis except that of guilt." *United States v. Stanton*, 501 F.3d 1093, 1100 (9th Cir. 2007) (affirming conviction for DUI where an officer "observed a 'strong odor' of alcohol on [the defendant's] person, … saw that his eyes were bloodshot and watery … observed that [his] balance was unsteady, … and that he generally swayed and wobbled during the course of [the officer's] field evaluation"). Even if other potential causes for Mr. Arroyo's symptoms of intoxication existed, a reasonable officer could have concluded that it was fairly probable that the symptoms Val observed were attributable to Mr. Arroyo's consumption of alcohol.

There is therefore no genuine dispute of material fact concerning either the officers' use of unreasonable force or the existence of probable cause for Mr. Arroyo's arrest. As a result, summary judgment in defendants' favor on Mr. Arroyo's negligence, battery, Bane Act, and Fourth Amendment claims is proper.

## CONCLUSION

For the foregoing reasons, Mr. Arroyo's request for a continuance and discovery under Rule 56(d) (Dkt. No. 41-1) and motion for relief from the magistrate judge's order (Dkt. No. 49, at 25–26) are DENIED. Defendants' motion for summary judgment (Dkt. No. 34) is GRANTED.

13

Because this order disposes of all claims in this action, the July 21, 2026 trial-setting conference is VACATED and Mr. Arroyo's other pending motions (Dkt. Nos. 42, 46, 47, and 49) are DENIED as moot.

**IT IS SO ORDERED.**

Dated: July 13, 2026

_____
P. Casey Pitts
United States District Judge

United States District Court
Northern District of California

14